# Rebecca Thompson's Appeal.

A. being the owner of a tract of land conveyed the same to B., C., D., E. and F. " for the purpose of prospecting, boring, digging, drilling, pumping and otherwise searching for and obtaining oil, salt and other minerals thereon," reserving to himself one-fourth of all the oil produced. The grantees were to hold in undivided one-eighth parts, B., C. and D. having each two-eighths, and E. and F. each one-eighth. Subsequently B., C. and D. conveyed each one-half his interest in said tract, in all three-eighths, unto G. and ten others in equal proportions; the deed containing a clause whereby the undivided interests so granted were to be subject as to control and management and as to time, place and manner of operating to the majority of the interest in said tract. Afterwards G. conveyed all his interest to one H. A majority of those interested in the tract subsequently leased the same to B. and C., the grantees, to sink a well of a fixed depth and to be entitled to one-half of all the oil produced. H. did not sign said lease nor did she assent thereto. Subsequently, the well being sunk and the amount of oil produced being very great, tanks were erected, and a certain proportion of the oil delivered to each of the parties interested. Subsequently H. filed a bill in equity against B. and C., alleging that she was not bound by the terms of the lease and was entitled to one-eleventh part of three-eighths part of three-fourths part of the oil, which amount she prayed defendants might account to her for. The defendants contended that she was bound by the lease and was not entitled to more than one-eleventh part of three-eighths part of one-fourth part of the oil. They further denied her right to an account.

Held, that B., C. and D. in conveying to G., the grantor of the complainant, were at liberty to impose upon the gift what conditions they pleased as to the control and management of the property, that the

5 OUTERBRIDGE.—15

[Thompson's Appeal.]

clause actually inserted to that effect was lawful and authorized the lease to B. and C., that, therefore, said lease having been made in good faith and concurred in by the majority in interest, was binding on the complainant although she had not assented thereto, and that therefore she was not entitled to the relief prayed for.

October 5th 1882. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT and GREEN, JJ.

APPEAL from the Court of Common Pleas of *Venango county:* Of October Term 1881, No. 244.

Appeal of Rebecca Thompson from a decree of said court dismissing a certain bill in equity filed by her against Orange Noble et al. for an account. Bill in equity wherein Rebecca Thompson was complainant and Orange Noble, G. B. Delemater, I. M. Wilcox, W. H. Abbott and S. S. Fertig, defendants. The bill alleged that the complainant and the said defendants were tenants in common of an oil well, and that said complainant was entitled to one-eleventh part of the three-eighths part of three-fourths part of all the oil produced from said well. The bill alleged that defendants had refused to deliver to the complainant the amount of oil to which she was entitled, and prayed for an account. The answer set forth the facts of the case at length and also denied that complainant was entitled to any greater proportion than one-eleventh part of three-eighths part of one-fourth part of the oil produced, which amount, it was alleged, had been duly delivered to her.

The case was referred to J. D. Chadwick, Esq., as examiner and master, who reported the facts to be as follows:

On March 28th 1860 John Farrell, being the owner of certain land in Allegheny township, made an agreement in writing with Orange Noble, G. B. Delemater, L. L. Lamb, G. T. Churchill and William Nason in reference thereto. By said articles said Farrell for the consideration of six hundred dollars granted and sold unto said Noble and others, their heirs and assigns forever, "for the purpose of prospecting, boring, digging, drilling, pumping and otherwise searching for and obtaining oil, salt and other minerals thereon," the said tract of land, further granting to them all facilities for the production and removal of oil therefrom. It was further provided by said articles that the interest granted was to be held by the grantees, till otherwise arranged, in undivided eighth parts whereof Noble, Delemater and Lamb were each to have two and Churchill and Nason each one. Farrell, the grantor, was to receive one-fourth part of all the oil produced.

Soon after the making of this agreement the grantees commenced sinking a well for oil, but not being successful, suspended operations in August 1860.

Afterwards in the fall of 1860, Noble, Delemater and Lamb

verbally proposed to take in a number of their relatives and friends (eventually eleven in number), of whom Nathan Wood was one. It was talked over in his presence and he assented to be counted in.

About the first of December 1861, Nathan Wood, by writing sold and conveyed to Rebecca Thompson, the complainant, certain oil interests including his right and expectancy in the Farrell property under the verbal proposal before mentioned of Noble, Delemater and Lamb, and to which he had before assented.

In the autumn of 1862 Noble, Delemater and Lamb in pursuance of the parol agreement above mentioned conveyed to Nathan Wood and ten others each one-eleventh part of three-eighths part of the total interest in the property under the agreement with Farrell. Said conveyance contained, inter alia, the following provisions:

"The estate or interests hereby granted, being undivided parts of other undivided parts of said interest granted by said Farrell—to be subject to the control and management as to time and place or places of drilling, operating, &c., and manner, as to whether by hiring by the day or contract per foot or arrangement by sub-lease, or otherwise, for a share of the oil &c., or otherwise, whether among and to themselves or part of their number or strangers of person or persons, owning or controlling the larger share or shares of said interest or estate so granted by said Farrell. Each of the said persons to have the proceeds of 1–11th of 3–8th of such interest so vested by said Farrell's articles, &c., in Noble, Delemater, Lamb, Churchill and Nason; and be liable to a proportionate share of all expenses &c., and of all liabilities to said Farrell or others by virtue of the covenants and undertakings in the said lease or article of said Noble, Delemater, Lamb, Nason and Churchill. No transfer of any interest granted or any part thereof to be made by either or all of the eleven grantees named, which shall confer a right to any other person to meddle with or control the management referred to unless expressly ratified by a person or persons holding more than 1–2 the interest so granted by said Farrell to said Noble, Delemater, Lamb, Nason and Churchill."

At the time of the execution of this instrument the grantors knew that Wood had previously transferred all his interest to Rebecca Thompson, the complainant. On April 14th 1863 Noble, Delemater and certain others interested in the Farrell tract executed a lease thereof to "said Noble and Delemater their heirs and assigns with such as they may associate with them, to have and to hold the same for their use forever for the purposes indicated" viz.: the boring and production of oil. Said Noble and Delemater agreed to sink the oil well on the tract to a fixed depth and were to retain one half of the oil produced. As to

the remaining half of the oil the lease contained the following clause:

"Said Noble and Delemater agree that they will pay and deliver or cause to be paid and delivered to said L. L. Lamb, Wm. Nason, G. T. Churchill, G. B. Delemater and others interested in the lease or article or deed from Farrell of oil privileges &c., in barrels to be furnished by them, said Lamb, Nason and Churchill, or said Farrell, &c., one-half of all the oil they may obtain and save from said well which they have agreed to sink, or any which they may thereafter cause to be sunk on said premises in manner following, viz.: to said John Farrell, or Lamb, Nason, Churchill, Noble, Delemater, &c., for him, his heirs and assigns in such barrels as they may furnish, one-fourth of all such oil, and to said Lamb, Nason, Churchill, Noble, Delemater, &c., another one-fourth of such oil, &c., in such barrels, &c., as they may furnish therefor, or vessels proper for removing the same which they are to furnish."

Said lease was agreed to and was signed by a large majority of the interest in the tract. Complainant did not sign the same nor did she ever give any assent thereto. Her husband, having himself an interest in the tract by assignment, signed an approval of the lease at the foot thereof in the form following:

"In behalf, and as agent for Rebecca Thompson my wife, the assignee of the interest of Nathan Wood, I approve the within arrangement."

Subsequently, Noble and Delemater entered into certain contracts with Fertig, Abbott and Willcox in regard to the boring of the well, whereby the three last named parties became entitled to certain interests in the product thereof.

After the well was bored, V. M. Thompson, husband of complainant, demanded in his individual right and in her right a certain proportion of the product of the well. He demanded in her right one-eleventh part of three-eighths part of three-fourths of the total production. Defendants declined to pay over to him said proportion, claiming that complainant was only entitled to one-eleventh part of three-eighths part of one-fourth part of the total production. Certain oil was accordingly delivered to Thompson in his own right and in that of his wife, viz., in all 7556 barrels, of which he applied 5410 on his own account, and the balance, viz., 2146, on account of his wife.

The master was of opinion that the conveyance by Farrell to the five original parties created a tenancy in common and not a partnership. That the subsequent conveyance by Noble, Delemater and Lamb to Wood and the ten others conveyed an estate in fee simple to said grantees, and that by virtue thereof, said grantees became tenants in common with the original pur-

chasers from Farrell. That the interest of Wood under said conveyance duly passed to Rebecca Thompson, the complainant, thus vesting in her the right to one-eleventh part of three-eighths part of one-fourth of all the oil produced. That the lease to Noble and Delemater, not being signed or assented to by complainant, was ineffectual as against her to deprive her of any part of her share of the oil. The master therefore recommended that a judgment quod computet be entered directing defendants to account to complainant for one-eleventh part of three-eighths part of three-fourths part of all the oil produced.

Defendants filed exceptions to the report on the ground that the master erred in recommending the entry of a judgment quod computet and also that he erred in not finding the following facts.

"By virtue of the agreement of April 14th 1863, Noble and Delemater and such as they might associate with them, were to deliver the different parties in interest one-fourth of the oil in barrels or vessels proper for receiving the same, to be furnished by said parties. The enormous and unprecedented production of the well made such mode of delivery an impossibility, and it became necessary to adopt other arrangements. Meetings of the parties in interest were held and a plan adopted and carried into execution by which tanks for holding the oil were erected, at the common expense, and proper persons employed by the parties in interest who kept account of the oil and made deliveries of it on orders from those interested. This plan was adopted before the compromise or arrangement with Thompson and was assented to by him. All oil was drawn by orders on the book-keeper and the defendants had nothing to do with its delivery. They drew their oil like the rest. The books kept showed the amount of oil drawn by each owner and the share of the total amount drawn, each party was entitled to, but not the amount in tank. The books were always open for inspection and monthly statements were made, which any interested party could get on application. Thompson received a number of such statements and his evidence as to the production of the well is based upon them. Their correctness is disputed by no one.

"That the plan adopted was a successful one, is evident from the fact that no party in interest (and they became numerous) ever complained that he did not receive his share of the oil. All were satisfied with the arrangement. By this arrangement the responsibility for the delivery of the oil was taken from Noble and Delemater and a different plan of delivery substituted. Thompson expressed himself satisfied and got his share the oil.

"The defendants never knew until 1868 that there was any

dissatisfaction on the part of the Thompsons or any claim made upon them, although Thompson lived within 40 rods of the residence of one of the defendants.

" Under the arrangement referred to, oil was delivered upon the orders of V. M. Thompson, acting ostensibly as agent for his wife."

The master reported that although these were undisputed facts clearly established by the evidence, they had no bearing upon the question of the right of complainant to compel an account from defendants. That they were immaterial and irrelevant, and could not affect complainant's rights.

After argument the court, Brown, P. J., delivered an opinion sustaining the exceptions to the report. He was of opinion that the conveyance by Farrell vested a fee simple in the original grantees, but concluded further that the instrument between Noble et al. and Wood et al. conferred rights upon the grantees which were subject to the control and management of those holding the majority in interest. He was of opinion, therefore, that the lease to Noble and Delemater was fully authorized by said last named instrument, and being concurred in by a majority of those in interest was binding on complainant, although she had not assented thereto. He was further of opinion that since Noble and Delemater had taken exclusive possession of the premises in question and continued to hold the same, complainant was bound to establish the allegation of tenancy in common, made by her in her bill by an action at law before she was entitled to an account. He therefore entered a decree dismissing the bill. Complainant thereupon took this appeal, assigning for error the decree of the court.

*J. B. Cessna* (with whom were *W. F. Hastings* and *J. R. Thompson*), for the appellant.

*S. C. T. Dodd* and *C. Heydrick,* for the appellee.

Mr. Justice Gordon delivered the opinion of the court, November 20th 1882.

The report of the learned master as first filed is wanting of the facts necessary to a proper decision of this case on any other hypothesis than that which he adopted as the true one. He determines that the plaintiff is entitled to the one-eleventh of three-eighths of three-fourths of all the oil produced from the Noble well, and bases his decree for an account on that conclusion. But he does not inform us whether or not she had any substantial claim for such account; should his theory fail and she be entitled to but one-eleventh of three-eighths of one-fourth of the oil thus produced. Under such circumstances we might well infer that the dispute was limited to the pro-

duct over and above the amount last stated, and that, assuming this amount to be the true one, she, or what is the same thing, her husband for her, had received all to which she was entitled, hence had no right to call upon the defendants to account.

For although he mentions the fact that she claimed, that, under any circumstances, she had not received the full amount of oil due her, yet he does not so find, but rather the contrary. The facts, however, necessary for the definitive disposition of this case are found in the master's supplemental report on the defendants' additional exceptions. In those exceptions it is alleged, that after the production had become so great that a delivery at the well in barrels, as originally contemplated, became impossible, by arrangement of the parties interested, tanks were erected, and proper persons appointed to make delivery of the oil on the orders of the owners; that Thompson for himself and wife assented to this arrangement, and, from time to time, drew their shares of the product of the well with the others; that all these orders were drawn on the bookkeeper, and that the defendants had nothing whatever to do with the delivery of the oil, since, by the arrangement above referred to, they were relieved from that responsibility. That the books were open to the inspection of all parties concerned; that full monthly statements were made of the produce of the well, which were received by, or known to, Thompson, and, finally that no dissatisfaction was expressed by the Thompsons until the year 1868.

The master answers this statement of facts as follows:— "We say that although these are undisputed facts, clearly established by the evidence, they have no bearing upon the question before us; the right of the plaintiff to compel an account on part of the defendants. They are immaterial and irrelevant, and cannot affect the rights of the plaintiff."

Thus whilst the master treats the facts, above stated, as undeniable, yet he thinks they come to nothing in the determination of this case. We think differently, for it is thus made certain that if the sublease to Noble and Delemater, on the 14th of April 1863, was binding upon Mrs. Thompson, she has nothing whatever upon which to found a claim for an account against the present defendants, and this for the reason that they have received nothing belonging to her, or if so, certainly not in the capacity of her bailiffs or receivers. The question then is, why was she not bound by the terms and conditions of the sublease?

She has no other title than that found in the agreement of Noble and others to N. Wood and others. Wood's assignment could give her nothing but what he afterwards got by that

agreement, for the previous parol arrangement had, in and of itself, no force whatever. But that conveyance reserved to the vendors the right to make just such a lease as they did make on the 14th of April 1863, by which Noble and Delemater were to receive one-half of any and all the oil they might find in the premises. It, therefore, signifies nothing that Mrs. Thompson did not assent to this sublease, for she had no power to dissent.

The Master falls into the error of supposing that under the Wood agreement she took an estate in fee in the realty. He says: " On the 14th of April 1863, the defendants, Noble and Delemater, took a lease or sale to themselves forever of this property on which was located the Noble well. They were by the terms of the conveyance, to give the grantors a certain portion of the oil. From the time of the execution of this conveyance they were the owners of the oil in fee while the signers of the sublease had only an interest in the personalty. As the plaintiff did not sign this sublease, her interest remained an interest in the realty, and its character could not be affected by anything done by the defendants."

We scarcely need say, that the merest glance at the papers will show that this conclusion is all wrong. The instrument referred to neither did nor could convey a fee to any part of the realty ; and this for the reason that Farrell's agreement of the 28th of March, with Noble and his associates, vested nothing in them but the right to work the land for oil ; by it they acquired no estate either in land or minerals. If they found oil they were to have three-fourths of that which they brought to the surface, but as to any property to the oil in situ they had none : Funk *v.* Haldeman, 3 P. F. S. 229. In this incorporeal right to prospect for and take the oil found in the land the parties may have had a fee, if such a term applies at all to a mere license, which I very much doubt, the case cited to the contrary notwithstanding. But if a fee, it was sub conditione, and base in its character. But this right, by whatever name designated, was but accessory to the main design, the getting of oil to the surface, for until that was done the parties had no interest in any tangible thing. These parties were engaged in an adventure of business, whether as partners or tenants in common can make no difference, and the right acquired from Farrell was but one of the means or appliances used in carrying on that business. Now, what we have to do with is this business and the product produced by it which was clearly a chattel. The Master's argument, therefore, based as it is, on a false premise, necessarily falls, and it follows, than when the original purchasers made their gift of three-eighths of their interest to their eleven friends, they had a right to impose upon that gift what conditions they pleased, and it was proper, reasonable and lawful for them to

[Wilson *v.* Waugh, Jack & Co.]

retain to themselves the management and control of the business in which they proposed to embark. Under these circumstances it matters nothing whether the plaintiff did or did not consent to the sublease, for the power to make it remained in the parties who had the major and older interest, and they having made it in good faith it was binding on their donees. Whilst, therefore, we do not altogether agree with the learned judge in the reasoning on which he based his decree dismissing the bill, yet we do agree with him in the result thus reached.

The appeal is dismissed, and decree affirmed at costs of appellant.